**UNITED STATES of America,**

v.

**John VALENTINO, Petitioner.**

**Cr. No. 31664.**

United States District Court
E. D. New York.

Jan. 11, 1962.

Albert J. Krieger, New York City, for petitioner.

Joseph P. Hoey, U. S. Atty., Brooklyn, N. Y., by Raymond B. Grunewald, Asst. U. S. Atty., Brooklyn, N. Y., of counsel.

RAYFIEL, District Judge.

John Valentino has filed a petition in the nature of a writ of error *coram nobis* to vacate and set aside on constitutional and other grounds a judgment entered in this Court on June 9, 1932, convicting him of the crime of unlawfully uttering, publishing and passing a forged and counterfeited obligation of the United States, knowing the same to be false and counterfeit.

Thereafter, following his conviction of a felony in the Court of General Sessions, New York County, he was sentenced as a fourth felony offender to imprisonment for a term of 25 years to life. He is presently confined in Attica State Prison, in Attica, New York, under that sentence.

A previous application for similar relief was made by the petitioner *pro se.* It was based on the claims (1) that the petitioner was not represented by counsel and (2) that he was insane at the time of his sentence. Judge Byers, finding that the petitioner had failed to present facts which would tend to impair the legality of the proceedings, and that an investigation by the United States Attorney had not disclosed a good reason for the granting thereof, denied the petition without a hearing, 2 Cir., 180 F. Supp. 628. His application for leave to appeal *in forma pauperis* was likewise denied. He then applied to the Court of Appeals for leave to prosecute *in forma*

*pauperis* his appeal from the order denying his petition. The Court of Appeals 2 Cir., 283 F.2d 634 remanded, directing that a hearing be held on the petition, and, because of the petitioner's indigence, that counsel be assigned to represent him.

A hearing was held thereon at which testimony and documentary evidence was introduced by the petitioner.

The documentary evidence consisted, *inter alia,* of the following:

*Exhibit B,* a report sent ʼto the Superintendent of the U. S. Detention Headquarters, in New York City, where the petitioner was then confined, by Dr. Menos Gregory, Director of the Bellevue Psychiatric Hospital, and a noted authority on mental diseases. The report is dated May 28, 1932, some two weeks prior to the imposition of sentence on the petitioner, and stated that his examination and observation of the petitioner revealed that he was then suffering from "syphillitic inflammation of the brain" and that Wasserman and spinal fluid tests were positive, and indicated the presence of "syphillis in the central nervous system"; further, that a psychiatric examination revealed that he was "dull and stupid, [and had] difficulty in comprehending what is said to him, and his conversation is very brief and mostly unintelligent" and that "he appeared to (sic) confused, incoherent and irrelevant". Dr. Gregory concluded that it was his opinion "that this man requires hospitalization in an institution for mental diseases";

*Exhibit C,* a letter, dated December 7, 1936, written by C. R. F. Beall, Chief Medical Officer of the Federal Penitentiary at Atlanta, Georgia, to Dr. Sam Parker, head of the Division of Psychiatry of Kings County Hospital, in Brooklyn, New York. It was a reply to a request by Dr. Parker for information concerning the petitioner, who was then under examination and observation as to his mental condition by a lunacy commission appointed by a Judge of the County Court of Kings County. Dr.

Beall stated that upon the petitioner's arrival at the Atlanta Penitentiary pursuant to his sentence by Judge Byers, and on the basis of the aforementioned Bellevue Hospital report, he was admitted directly to the neuro-psychiatric ward of the institution for observation and treatment, and that he remained there almost continuously until his discharge more than a year later; that upon admission he was "irritable, seclusive and somewhat depressed", and that he had a psychosis with cerebral syphilis".

Dr. James A. Reilly, a specialist in the treatment of mental diseases, testified in behalf of the petitioner. He is presently associated with the Columbia Presbyterian Hospital, and teaches neurology in both Cornell and Albert Einstein Medical Schools. He is certified by the American Board of Psychiatry and Neurology, and has specialized in those fields for a number of years. After examining Exhibits B and C he stated that it was his opinion that the petitioner, in and about June, 1932, when he was sentenced, "could not understand the nature of the charges" then pending against him, and could not "possibly discuss the matter intelligently with [his] attorney".

The record also discloses that the petitioner, in a period of depression experienced by him during his confinement in the United States House of Detention while awaiting disposition of his case, attempted to commit suicide.

There is no single test or formula for determining legal insanity. The M'Naghten rule, commonly referred to as the "right and wrong" rule, is embodied in Section 1120 of the Penal Law of the State of New York, McKinney's Consol. Laws c. 40, and has been applied for many years in more than half of the States. Recently, however, it appears to have lost favor in some areas, including England, where it had its origin, being regarded by many authorities as unrealistic in the light of the substantial advances which have been made in psychiatry.

In the case of Durham v. United States, 94 U.S.App.D.C. 228, 214 F.2d 862, 45 A.L.R.2d 1430, decided in 1954, the Court of Appeals for the District of Columbia Circuit, in reversing the judgment of conviction therein, established a new test to replace the M'Naghten and the "irresistible impulse" rules which it previously employed. It decided (214 F.2d, p. 874) that the rule which must be applied in the future "is simply that an accused is not criminally responsible if his unlawful act was *the product of mental disease or mental defect.*" (emphasis added).

In Dusky v. United States, 362 U.S. 402, 80 S.Ct. 788, 4 L.Ed.2d 824, the Court, in reversing the judgment of conviction, rejected the test employed by the District Judge as to whether "the defendant [is] oriented to time and place and [has] some recollection of events" and held that the "test must be whether he has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding— and whether he has a rational as well as factual understanding of the proceedings against him."

The test provided by Section 4244 of Title 18, United States Code, is whether a person "after arrest and prior to the imposition of sentence" [is] "presently insane or otherwise so mentally incompetent as to be unable to understand the proceedings against him or properly to assist in his own defense  *  *  *." While that statute post-dated the imposition of sentence on the petitioner its provisions, as stated by the Court of Appeals herein, "are declaratory of the common law."

The Supreme Court, in Dusky v. United States, supra, spoke of the "difficulties of retrospectively determining the petitioner's competency as of *more than a year ago  *  *  *.*" Obviously, those difficulties are aggravated when one is called upon, as I am here, to determine the mental capacity of this petitioner as of some 30 years ago.

It is my considered opinion that at the time of the imposition of sentence upon the petitioner his mental faculties and capacity were so substantially impaired that he was unable to understand the proceedings against him or consult with his counsel—assuming that he was represented by counsel, although the record does not disclose that fact—and assist in his defense.

Accordingly, the judgment of conviction entered against the petitioner on June 9, 1932 is vacated.